UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                  Case No. 21-CR-163

JEREMY ARRINGTON,

        Defendant.

## PLEA AGREEMENT

1.      The United States of America, by its attorneys, Richard G. Frohling, Acting United States Attorney for the Eastern District of Wisconsin, and Carol L. Kraft, Assistant United States Attorney, and the defendant, Jeremy Arrington, individually and by attorney Teuta Jonuzi, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.      The defendant has been charged in a one-count information, which alleges a violation of Title 18, United States Code, Sections 1343 and 2(a).

3.      The defendant has read and fully understands the charge contained in the information. He fully understands the nature and elements of the crime with which he has been charged, and the charge and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4.      The defendant voluntarily agrees to waive prosecution by indictment in open court.

5. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

***THE UNITED STATES ATTORNEY CHARGES THAT:***

*1. Between a date in 2012 and continuing through 2018, in the State and Eastern District of Wisconsin and elsewhere,*

**JEREMY ARRINGTON,**

*and others, devised and participated in a scheme to defraud and obtain money by means of materially false and fraudulent pretenses, representations, and promises.*

*The Scheme*

*2. The scheme involved the solicitation of investment funds to be used to acquire and renovate real estate to lease and sell for profit. The scheme is further described in part, in the following paragraphs:*

*a. Acting as the co-owner and chief financial officer of Wisconsin Home Builders Network, LLC (WIHBN), a limited liability company organized under the laws of the State of Wisconsin, the defendant, together with his business partner, solicited investors to provide funds for real estate investment.*

*b. Potential investors were told that WIHBN had expertise in real estate investment, was engaged in joint-venture real estate projects with investors, was a profitable business, and that there was little or no risk because invested funds would be used for the company's general business operations and would be secured by the company's assets and profits, and that the funds would be used to acquire and renovate specific properties and would be secured by mortgages on the properties.*

*c. Potential investors were directed to wire investment funds to the WIHBN bank account in exchange for promissory notes that purported to memorialize their investment agreements and promised returns that ranged from 12% to 36%.*

*d. Based on these representations and promises, WIHBN obtained approximately $2.8 million in investor funds between 2012 and 2017.*

### *The Materially False Pretenses, Representations, and Promises*

3. *In furtherance of the scheme, the defendant and his business partner made the following material misrepresentations and promises, among others:*

   a. *Contrary to the representations that WIHBN was profitable, it was not, and in fact, between 2012 and 2017, the business did not generate sufficient revenue in any year to meet its operating expenses and pay the principal and interest on the investors' promissory notes as they come due.*

   b. *Contrary to promises that investor funders would be used for real estate acquisition and renovation, investor funds were diverted to other purposes, including but not limited to, Ponzi-like payments to existing investors, draws by the partners, debt reduction, legal fees, and back taxes.*

   c. *Contrary to promises that investor funds would be secured, they were not, and with a few exceptions, mortgages that were provided to investors were never recorded.*

### *Execution of the Scheme*
### COUNT ONE

### *THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:*

4. *On or about February 2, 2017, in the State and Eastern District of Wisconsin and elsewhere, for the purpose of executing the above described scheme,*

### *Jeremy Arrington*

*caused to be transmitted in interstate commerce, a wire communication which accomplished the transfer of $100,000 from the account of D.K. at East Wisconsin Savings Bank, in Appleton, Wisconsin, to the WIHBN account ending in 5699 at Wells Fargo Bank in San Francisco, California.*

   *All in violation of Title 18 United States Code, Section 1343 and 2(a).*

6. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 5. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a

reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

>On a date in 2010, Arrington partnered with J.N. to form a limited liability company known as Wisconsin Home Buyers Network, LLC (WIHBN), a company they originally characterized as a buyer's placement program designed to help individuals with poor credit histories acquire home mortgage funds. That business model proved unsuccessful, and the two partners then shifted their business focus to one that ostensibly would provide a variety of real estate and construction services, including real estate brokerage, real estate investment (acquiring, rehabbing and leasing and selling real estate for profit), property management, general contracting, and trade contractor services. In order to augment their business model, the partners formed additional companies known as WIHBN Realty, WIHBN Contractor Services, WIHBN Financial Services, WIHBN Electrical Mechanical Services, WIHBN Total Plumbing, and XSpect. J.N. served as the Chief Executive Officer (CEO) of WIHBN and Arrington served as its Chief Financial Officer (CFO). The partners promoted the investment portion of their business with a marketing video and a web site, http://wihbn.com, introduced themselves to various investment clubs, and solicited individual investors with presentations that promised little or no risk and heathy monetary returns ranging from 12% to 36%. They promoted WIHBN as a "one stop shop" for real estate, renovation, and investment needs for both experienced and novice investors, and boasted a "track record for investment planning, business planning and financial analysis."

>Between 2012 and 2017, the partners solicited and obtained approximately $2.8 million in investor funds from more than 16 investors. Investors were directed to wire their investment funds to a WIHBN Wells Fargo bank account, account number ending 5699, in San Francisco, California, an account that was controlled by Arrington and J.N. In exchange for their investment funds, the investors received notarized "Corporate Promissory Notes," signed by the defendant, detailing the terms of the investment. Some investors also received mortgages that purported to be for specific properties that were being acquired and rehabilitated with the investor's funds, although the partners failed to record all but of few of these mortgages.

>Contrary to promises that the investor funds were secured by the assets of a successful business or were being used to acquire and rehabilitate specific properties, WIHBN was not successful nor were investor funds used as promised. Rather than being successful and profitable, WIHBN had business debt, delinquent tax obligations, and other financial issues that made the business unable to timely meet the payment obligations on the promissory notes, and rather than being used for the promised investment purposes, investor funds were comingled with other funds and were used for *Ponzi*-type payments to existing investors, payroll for the other WIHBN businesses, debt reduction, personal draws, back taxes, and legal fees among other things. When they were unable to pay the returns set forth in the various promissory notes as they came due, the partners sought extensions on the notes, solicited additional funds from existing investors, and attempted to secure new investors. In the end, less than $500,000 of over $2.8 million in investor funds were returned to investors as principal and interest.

4

One of WIHBN's investors was D.K., who as set forth in Count One of the Information, wired $100,00 from her bank account at East Wisconsin Savings Bank in Appleton to the WIHBN Wells Fargo account ending in 5699 on February 2, 2017. D.K was introduced to the defendant and J.N. in January 2017. At a meeting with the two partners, they told D.K. that WIHBN was a successful business that was then focused on helping military veterans by placing them in affordable housing. They represented to D.K. that D.K.'s investment would be used to acquire and rehabilitate real estate for that purpose and that D.K.'s investment would be safe and would in fact, carry little or no risk at all. Based on these representations, D.K. made investments totaling $328,070, wiring $100,000 to the WIHBN Wells Fargo account on February 2, 2017 as alleged in Count One of the information, and wiring additional funds to the WIHBN account on March 31, 2017, June 15, 2017, and September 6, 2017, each time receiving a promissory note that promised a 12% return on her investments.

Rather than acquiring and rehabilitating real estate that would be used for veteran housing, as D.K. was promised, her investment funds were used for draws by the partners, payments to the defendant's separate businesses, delinquent taxes on an associate's properties, and to make *Ponzi*-type interest payments to five other investors. WIHBN failed to pay to D.K. any of the principal or interest due on her promissory notes.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in this offense.

## PENALTIES

7.  The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: 20 years and $250,000. The count also carries a mandatory special assessment of $100, and up to three years of supervised release. The parties further recognize that a restitution order may be entered by the court.

8.  The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## ELEMENTS

9.  The parties understand and agree that in order to sustain the charge of Wire Fraud in violation of 18 U.S.C. § 1343, the government must prove each of the following elements beyond a reasonable doubt:

5

<u>First,</u> the defendant knowingly devised or participated in a scheme to defraud as alleged in the information;
<u>Second</u>, the defendant did so with intent to defraud;
<u>Third,</u> the scheme involved materially false or fraudulent pretenses, representations, or promises; and
<u>Fourth,</u> the defendant used or caused the use of interstate wire communication as described in the information.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

### Sentencing Guidelines Calculations

13. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided

6

false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

14. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

## Base Offense Level

15. The parties acknowledge and understand that the government will recommend to the sentencing court that the applicable base offense level for the offense charged in the information is 7 under Sentencing Guidelines Manual § 2B1.1(a)(1), and that a 16-level upward adjustment is applicable under Sentencing Guidelines Manual § 2B1.1 (b)(1)(I) based on loss greater than $1,500,000, and that a 2-level upward adjustment is applicable under Sentencing Guidelines Manual § 2B1.1 (b)(2)(A)(i) and (iii) as the offense involved 10 or more victims and resulted in a substantial financial hardship to one or more victims, for a total offense level of 25.

## Acceptance of Responsibility

16. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. The defendant acknowledges, understands, and agrees that conduct consistent with the acceptance of responsibility includes but is not limited to the defendant's voluntary identification and disclosure to the government of any and all actual or potential victims of the offense prior to sentencing. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion

7

recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

17. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

18. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

19. The government agrees to recommend a sentence at the low end of the applicable sentencing guideline range, as determined by the court. The defendant is free to make his own recommendation to the court.

## Court's Determinations at Sentencing

20. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

21. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

8

## FINANCIAL MATTERS

22. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

23. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form. The defendant further agrees, upon request of FLU whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

### Fine

24. In light of the substantial restitution due in this case, the parties agree to recommend to the sentencing court that no fine be imposed against the defendant.

### Special Assessment

25. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

9

### Restitution

26.     The defendant agrees to pay restitution as ordered by the court. The parties acknowledge and understand that the government will recommend to the sentencing court that the defendant pay restitution, currently estimated at approximately $2,059,150.15, jointly, and severally with any co-actor(s) convicted of this offense. The defendant understands that because restitution for the offense is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

### DEFENDANT'S COOPERATION

27.     The defendant, by entering into this agreement, further agrees to cooperate with the government fully and completely in its investigation of this and related matters, and to testify truthfully and completely before the grand jury and at any subsequent trials or proceedings, if asked to do so. The parties acknowledge, understand and agree that if the defendant provides substantial assistance to the government in the investigation or prosecution of others, the government, in its discretion, may recommend a downward departure from: (a) the applicable sentencing guideline range; (b) any applicable statutory mandatory minimum; or (c) both. The defendant acknowledges and understands that the court will make its own determination regarding the appropriateness and extent to which such cooperation should affect the sentence.

### DEFENDANT'S WAIVER OF RIGHTS

28.     In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

29. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that

11

defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

30. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

31. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

32. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statute or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statute[s] or Sentencing Guidelines. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3)

12

Case 2:21-cr-00163-BHL   Filed 08/03/21   Page 12 of 15   Document 2

ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

### Further Civil or Administrative Action

33. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### GENERAL MATTERS

34. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

35. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

36. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

37. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

38. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

39. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 7/23/2021

*Jeremy Arrington*
JEREMY ARRINGTON
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 7-23-21

*Teuta J*
TEUTA JONUZI
Attorney for Defendant

For the United States of America:

Date: 8/2/21

*Kelly B Vaylen (for)*
RICHARD G. FROHLING
Acting United States Attorney

Date: 8/2/21

*Carol L Kraft*
CAROL L. KRAFT
Assistant United States Attorney

15